**MORTON v. MURPHY LUMBER & HARDWARE CO.**

Common Pleas Court, Summit County.

No. 170419.   Decided October 26, 1951.

Samuel Kelly, Alexander Russell, Akron, for plaintiff.
Gene T. Runko, Wm. Locke, Akron, for defendant.

## OPINION

By WATTERS, J.

This action, wherein the plaintiff, Florence Morton, seeks damages for false arrest or false imprisonment against The Murphy Lumber and Hardware Company, a corporation, was tried to the court, a jury being waived.

The case grows out of these facts. The defendant corporation had procured a judgment against Chase Morton, husband of the plaintiff, for $241.00 in the Akron Municipal Court, which by the filing of a certificate of judgment came into this court. (J. L. 4139). Execution was filed and returned unsatisfied, and finally the company's attorney caused a proceedings in aid to issue against the defendant in said case, Chase Morton, and against his wife, Florence Morton, plaintiff here. Apparently counsel sought to examine both the debtor, Mr. Morton, and his wife, as to their property, the latter presumably as a garnishee holding property belonging to her husband, the debtor. Nevertheless, Mrs. Morton and Mr. Morton were ordered to appear for examination as though they were both judgment debtors, although the judgment of course was against Mr. Morton only.

The praecipe issued to the clerk by the company's counsel on the aid proceedings had the notation "Personal Service Requested." There was some discussion that the above words were written in different ink than the other words. However the court cannot draw any inference from that fact. The fact remains that the clerk did not mark on the notice issued for the two Mortons that service was to be "personal" and the sheriff's return shows only residence service on the Mortons.

Mrs. Morton denied in her testimony that she had any knowledge whatsoever of the service. Mr. Morton did not appear as a witness at all.

The fact remains that neither one of them showed up for the proceedings in aid examination hearing. Thereupon the company's counsel caused the court to sign an arrest order

to the sheriff as and for contempt against both Mortons for their failure to appear. They were both taken into custody by the deputy sheriff and brought down to the county jail about 8:30 A. M. They were not placed in a cell, but held apparently awaiting call of the case before the court on the contempt proceedings. Mrs. Morton called her attorney, Mr. Samuel Kelly, from the jail office, and after some time he arrived and discussed the matter with her and Mr. Morton and then went to the court house to check the records in the case. The attorney then went to the judge who issued the order, and counsel for the company was called, but before the matter was presented, it was after lunch, about 1:30 P. M., at which time the Mortons were taken over before the court and after some more or less informal discussion hereinafter set forth in some detail, they were permitted to go.

It seems to be the common belief at the bar that it is necessary, in order to punish for contempt, that the order disobeyed must have been personally served on the person charged with the contempt. However in **9 O. Jur., page 84, par. 44,** it is held:

"It is essential to the punishment of a person for contempt for the violation of a court order, that he have notice of the order, **either actual** or by service of the same upon him. This rule applies whether the person sought to be punished for the contempt is a party to the proceedings in which the order is issued or a stranger thereto."

Thus we see that personal service of the order is not necessary. It is the better way, as the person cannot well deny notice. In the instant case the order to appear was served at the residence. On the evidence the court cannot find that she had notice of it, although she and her husband may well have had due notice thereof.

In the attachment affidavit (Plaintiff's Exhibit 3) upon which the order of arrest was made, it was stated that personal service was had on the previous order to appear. This of course was not true, and a check of the sheriff's return would have shown only residence service.

Counsel for plaintiff cites **§11,754 GC,** which appears under the Chapter on execution, and sets out those privileged from arrest. The pertinent part is as follows:

"Section (5) Females, on mesne or final process for any debt, claim, or demand arising upon contract."

It is insisted that the debt, claim or demand out of which the plaintiff was arrested arose out of contract and that therefore she was privileged from arrest even if she had been the judgment debtor and was guilty of contempt.

The court cannot find any interpretations of this part of

the statute, and counsel have cited none. However it surely was not intended to exonerate a female person for contempt of court for failure to obey an order to appear for questioning as a judgment debtor of which order she had actual notice by personal service or otherwise. Such defiance of the court could not be tolerated.

However the attachment or arrest of plaintiff was wrongful, and due to inadvertence upon the part of the defendant corporation's attorney and agent in failing to check the sheriff's return, showing residence service on plaintiff on the order to appear. A further mistake of course was made in treating her as a judgment debtor rather than as a garnishee or one holding property probably belonging to her husband, the real judgment debtor.

However there is no proof of malice upon the part of the defendant corporation's attorney and agent. Even if malice had been shown, no punitive damages should be awarded against the defendant corporation, because there was no evidence that the defendant authorized, participated in or ratified the arrest, nor any proof that the defendant failed to exercise due care in the selection of its agent, the attorney. This is the test for corporate liability for malicious acts of agents laid down by the Supreme Court in Columbus, etc. **Railway v. Harmon, 109 Oh St, 526.** But no actual malice—no malicious conduct was shown.

When the plaintiff and her husband came before the court on February 7, 1949, at 1:30 P. M. on the contempt order, the evidence shows that the matter was discussed more or less informally by counsel and the court regarding settlement of the manner of payment of the judgment debt. It was conceded apparently that the contempt order probably should not have been made due to the residence service on the previous order to appear, and for other reasons apparent. Some settlement of the manner of future payment was agreed upon and the Mortons were allowed to go on their way. That happened on February 7, 1949, but the journal entry which apparently disposes of the contempt proceedings was not filed of record until August 4, 1949, almost six full months after the contempt hearing and after the instant case was filed (March 15, 1949). No reason appears for this delay. The entry (Defendant's Exhibit 3) J. L. 4139, was approved by counsel for all concerned. But nothing is said therein about the contempt disposition, but speaks of the agreement to pay the judgment debt, with the statement that Mr. Morton and Mrs. Morton offered to pay the judgment, and then providing that Mr. Morton agreed to pay and ordering him to pay five dollars per week beginning February 14, 1949.

When this entry was drawn and approved by counsel does not appear, but it was not filed until six months after the hearing, and there was no clause therein making it date back. (nunc pro tunc.)

The court has studied the case of **Brinkman v. Drolesbaugh, 97 Oh St 171**, and its approval in **Click v. Parish, 155 Oh St, 84, 44 O. O. 96**. In the former case the court fully discusses the question of false arrest and false imprisonment charges against an arresting officer.

Were the case against the sheriff or deputy sheriffs, no recovery would lie as the order of arrest or attachment was apparently regular on its face. But the court finds the plaintiff has proven a technical case of false imprisonment and is entitled to some compensatory damages, though nominal. There was nothing vicious about the imprisonment. The plaintiff was not locked up. The plaintiff was technically falsely imprisoned. She was not free to go about her business for several hours. She was not mistreated or abused. Mr. Morton owed the judgment for house repair materials furnished by the plaintiff company. Many executions and proceedings in aid had been issued. Mr. Morton did not pay and has not paid anything so far.

Counsel for the plaintiff corporation made a mistake. There was nothing wilful or malicious about it.

The court finds the plaintiff entitled to recover One Hundred ($100.00) Dollars damages and costs.

Journal entry may be drawn accordingly with exceptions to both parties.